Our next case for this morning is Guerrero v. BNSF Railway Company Robert Patterson v. BNSF Railway Company Robert Patterson for the Plaintiff, Leader Guerrero. May it please the Court, this is a case brought under the Federal Employer's Liability Act whereby Celso Guerrero, the deceased husband of Rita, had been called at home on his off hours, holiday week or regular weekend, by his supervising roadmaster to come in for work for the railroad, exclusively for the railroad's benefit, because there was a severe snowstorm forecast and developing. The district court dismissed the case on summary judgment, finding that there were not sufficient facts in the court's judgment to set up a question of fact as to whether Mr. Guerrero, at the time this happened, was within the course and scope of his your argument is that even though ordinary commuting is not within, at least for this particular job, is not within the scope of employment, the circumstances of being called in from one's time off for an impending emergency at the railroad, or impending extra work, I should say, to clear the snow off the tracks and so on, brings it within the scope of employment? Indeed so. A normal commute, as the so-called commuter cases hold pretty uniformly, where your clock starts when you arrive at work. Well, I take it that the railroad had other people who were scheduled to start their normal shifts at the same time. We don't know specifically, other than we do know... It did not have a workforce of zero at the time. Correct. It had normal workers and it was asking CELSO to come in to supplement the workforce. Exactly so. In your view, would a normal, somebody who was reporting to his normal shift at the same time, be entitled to recover under the Employees Liability Act? Not if the other circumstances that apply to our case were present during that time. That's what puzzles me, because I can't see any way in which the risks that CELSO faced of driving in to report for a 6 a.m. shift were different from the risks of any other employee who was not being paid overtime driving for a 6 a.m. shift. They appear to be identical. The risk during the actual driving maneuver, driving in, would be the same, yes. But that's when the accident occurred. But he would not be entitled, a person coming in just on a regular shift, your honor, is not considered within the scope of employment. Yes, but I can't see why driving to an overtime shift would be different from driving to a regular shift, when the risks of the two people driving to the same place at the same time are different. He was coming in when he didn't have to do that and could avoid the hazard of this severe snowstorm. He was doing it for the benefit of the railroad. Now, of course, everybody who goes to work is working for the benefit of the railroad as well as himself. Indeed. Both sides gain from economic transactions. That's why I could have understood an answer that said the regular worker reporting in a snowstorm is entitled to coverage. But you want to distinguish the overtime reporter from the non-overtime reporter, and that's what I can't get. The regular employee might qualify for an FELA case if he had supervision of his employer, the roadmaster, if he was coming in doing something different than a normal commute. That circumstance of the normal question. In other words, the commuter cases all say, Your Honor, that if you're just coming into work on a regular basis, you're just a commuter, then you're not covered within the scope of employment. I'm having trouble seeing why it's different if you're reporting to overtime work when the risks are identical to those faced on the same road at the same time as people who are working. That's my problem. I think I understand it. The circumstances would be something like in the Goldwater case where the employee was sent by a supervisor on a special mission 40 miles away and she was using the train and she got assaulted, as I remember, during this trip. Now, if she had just been going on a meeting 40 miles away on a regular shift, not been sent by the boss, not been specially appointed to do that, then the cases would say, and there are many cases of people who are just commuting, that they're not covered. So you're saying that the discrepancy that Judge Easterbrook is pointing to between the person coming for the ordinary shift at 6 a.m. versus the person who's been specially called in is baked into FELA law. If the statute gives the status of one working within the scope of employment who is doing a special task, so to speak, for the employer, it's not the risk face that's different, but what they signed up for is a bit different. As soon as Mr. Guerrero agreed when he got the phone call the night before to go, he no longer had discretion to refuse to answer the employer's call. He would have had to say no right on the spot, and then the employer would have continued calling somebody else. But I guess if the Federal Employer Liability Act isn't 100% consistent about nature of risk, maybe nature of risk isn't the factor that dictates scope of employment. It's a different question. Your Honor is correct. Risk is one factor, but it's not the only factor in determining whether the act covers. The act does not cover the person usually reporting to work on his regular shift because what he's doing in that travel is not incident to the railroad work. That's what the cases interpret the act to mean. However, once he's called at home, once the supervisor says come in and gives him a time, and he remains under the supervision of the supervisor, even though there's a question of fact about that with the defendant. So he could have been directed to a different location along the train line while he was driving in. He could have, in other ways, had his actions dictated by the railroad in the way that the ordinary commuter doesn't. The ordinary commuter could stop off at a Starbucks or could run an errand on the way to work and that would be fine, but he did not have that discretion. That's exactly right. Roadmaster Burns testified that he was subject to orders for anything that the railroad wanted him to do. Dan Parrish, colleague or a roadmaster in another district next door, said that he has to be available to do whatever they call him to do. So that's the distinction. The distinction is that the person driving in for their regular shift is on their own time until they show up at the workplace, whereas he is not free to do whatever he wants to do. That's correct, and they're not being paid. He was being paid. The railroad argues that that was a mistake. I don't know how many people would think that if you're on the clock and you're being paid and you're subject to supervision... Or at least they say he was... They don't quite say it's a mistake. They say he would have been paid from the time of the phone call until the time he arrived at work if he hadn't died along the way. That's conjured up, Your Honor. They say that, though. They say it, and they got it out of the mouth of Nick Burwell at his deposition after he had been counseled by an attorney that morning. I don't criticize the lawyer, but there's no evidence in the record that that is the case. But there is evidence in the record, I take it, that for people who are called in for special assignments who make it to the workplace, they get paid. Indeed, they do. So at least we know that much. The railroad has conceded that much. And he would have been actually considered under pay the time he left his house, the time he drives down Route 34, to the time just before the collision. Nothing has happened, so he's under pay. Okay. Well, I think you're about out of time. Your Honor, I am. Thank you. I think I have a little bit... A tiny bit, if you stop talking now. Mr. Sykes. Good afternoon. May it please the Court. My name is Richard Sykes, and I represent the BNSF Railway. This time, I suppose we can't avoid an initialism. It had one of the great names in history and turned it into an initialism. I was going to say that. BNSF is accurate. That's what they chose their name to be. So other than that, I'll try not to do any others, Your Honor, except you are giving one freebie. But I will still try to avoid it. I suggest his name, like it or not. Judges of the Seventh Circuit. The general rule, as you well know, is that when a railroad employee is commuting to and from work, that is not considered within the scope of his employment. The reason for it is that he's undergoing the risks that accompany travel by anybody in the public. He's on public property. These are risks that are just associated with anybody that travels. It's different when he's working on the railroad, because those are areas that are not open to the public. But you know, that rule has its own exceptions. Because if somebody showed up to work, having driven from home, not in work status, fine. And then in the middle of the day, the company needs him to drive to a different station, let's say. I mean, I know there are a lot of BNSF stations between downtown Chicago and Aurora, for instance, since I am frequently on a BNSF train for that purpose. So you could ask an employee to drive from the Hinsdale station out to the Aurora station, and you would be in work status. And yet you'd be subject to the same risks of the road as anybody else who's driving around in the western suburbs. That's correct. But you're in the scope of your employment because you're doing it. You are working at that point, but you're not working at this point. I think it would be the distinguished thing factor would then become whether the railroads negligence played any role or whether the accident occurred because of some agent that the railroad used. Typically it happens when a railroad person is being transported by a camp company, and that is an operational aspect of the railroad. And the railroad's liable, but the person is still on duty. Right. And so that's actually the nub of the question here because the nub of the question is we know all those ordinary commuters are not within the scope of employment, but when there's a special call that comes out and you're on the clock, assuming you don't die on the way to work is your view, maybe even so, are you in fact more like the person who's driving on railroad business from the Hinsdale station out to Aurora, or are you more like the person who's simply commuting to work? And the argument is that the special call makes you more like the person who's in the midst of work. Right. And that's where we disagree, and perhaps that is the nub of the issue, and I'll get right to that. It's not any different. It's just not any different. Well, you say that, but I need to know it is a little different because he didn't have to go. It's not materially different is what I want to say. He was called in for overtime, or if it's a railroad emergency, it should make no difference to these circumstances. He's still commuting to work during that time period when he leaves his house, travels on the public way, and gets to work. He's still doing the exact same thing then that he would do if he was just going to his regular day of work. So Mr. Patterson says it's a little different in that, let's assume it's today's world where everybody has their Bluetooth cell phone attached to their car, hands-free, all's good. And on the way to work, if a person is simply commuting, the supervisor could call and you could say, I'm not interested in taking that route. I'll be there on time when the workday begins, but he's subject to being diverted to another errand for the railroad. He's on the clock, he's earning money, and so he's fully subject to their direction. I'll address on the clock, but that's no different than his normal day of work. It is different. He's not subject to their direction while he's commuting on his own time. That's not the case. There's no facts that establish that. Without being paid. Mr. Guerrero, okay, that's a distinguishing fact, which I will get to. But Mr. Guerrero, on any day, could be called, on his way into work, commuting, could be called up by somebody, a supervisor, and asked to go to some other location. Does the railroad select the route he takes to the place where he's going? Not at all. He can go anywhere he wants. In this case, Mr. Guerrero, we didn't select the route he took. He chose the route. He chose when he could, when he needed to go. He chose what speed he would travel at, what vehicle he took. He chose all these things. And there's no fact that establishes that he was not on his own personal time during that period of time. Nothing prevented him from stopping off and having breakfast or going to Starbucks. As long as he showed up on time for work, just like he would do any other day. So that's why I'm saying, there's little differences in the facts, but they're not material differences to what the rule of law is under the FVLA case. Your Honor, federal employers' liability. Pardon me? What about my person in the middle of the day who's told to go from Hinsdale to Aurora? And does railroad dictate the streets or the vehicle or the route then? No, but that person's already on duty and working. Okay. He's already on duty and working. That's the question. Let me address the clock issue. Mr. Sykes, am I confused about your argument? I thought your argument in the end was it didn't make any difference whether he was on duty or not. Because there not only is no evidence that the railroad was negligent, there isn't even a claim that the railroad was negligent. My argument is not that he was on duty. My argument is that he was not on duty. This is part of your brief. Are you abandoning it? No, I'm not. That's part of our argument, our alternative argument, that if the court were to find that this was in the scope of a complaint, if somebody begins work at Railroad Yard One and is told to drive to Railroad Yard Two and negligently himself runs off the road and collides with an abutment, the railroad isn't liable because it's not negligent or anything. That's the gist of part three of your brief. Maybe you want to address that. So I understood the theory to be in part three, so you know what you're contesting. I understood your opponents to be saying that it was negligent for the station master, given the snow conditions, not to just bring him in right away while it was still clear in the roads, or to give him extension to wait for IDOT to plow the roads off, so that there was some little bit of railroad. You don't have to have much for the Federal Employer Liability Act, but there was some bit of negligence there, so you can address that. Our argument on the negligence count is simply that the railroad didn't do anything wrong in requiring Mr. Guerrero to come into work, or not even requiring him, asking him to come into work, because it did not require him to, it was his choice whether he wanted to do it or not, but asking him to come into work under conditions where it was snowing. Okay, would you address my colleague's question? Is it potentially negligence on the railroad's part to choose a particular time to ask someone to come in? I would say it's not under the circumstances of this case, because all that the person did was ask him to come. It's hard to say that the negligence lay in asking him to come in before the road was plowed, given that he ran into a snow plow, that was the cause of his death. It appears the roads were being plowed, but how about, if the railroad is going to pay for his time anyway, should have called him in the previous evening, rather than saying, we're calling you now, why don't you come in 12 hours after there's more snow? You know, he wasn't being paid for working at that time, your honor. I just want to make sure that's clear. There was an agreement as to compensation under the union. It has nothing to do with whether or not an employee is on duty for purposes of the Federal Employers Liability Act. And your honor asked counsel. I think Judge Bauer has a question. Could he refuse to come? Yes, he could have, absolutely. He could have said, no, I don't want to, and then Mr. Burwell go down the line. There's nothing compelling the employee to accept the emergency problem, that that's the railroad's problem. That's correct. He was not compelled to come to work. He was asking. He's seeking overtime. He wanted the overtime, absolutely. Do the employees look forward to extra pay? It appears, I think most employees do, and it appears especially on the record that Mr. Guerrero liked to have overtime. Do railroads still have extra boards? Oh yeah. They call them and they fight to stay at an extra board so they get called in front of somebody else. Correct. Extra boards are more operational than they are for maintenance away folks like this. It's not a convenience of the railroad, it's a convenience of the employee. In this circumstance it was because he, since they had, he had seniority, they had to offer him the overtime, but he didn't have to accept it. That was my understanding. Okay, thank you very much Mr. Sykes. Thank you. And I think you have a little short of a minute, so you'll have to be quick. The issue before the court is whether or not the district judge erred in not finding questions of fact. We could look at the facts and draw judgments one way or the other, and that's what a jury is going to have to do, not the court. In response to Judge Bower's question just a moment ago, the question whether or not he could refuse. He could refuse, but under the Wilson case from 1988, whether it's voluntary that he comes in or whether it's required that he comes in is no factor to be considered. The fact is that he's there, he's on his way, and he's within the scope of his employment. So the voluntariness is not a material consideration. There also is evidence in the record from Dan Parrish and Ellen Burns that when you get these calls, if you can come, you're expected to do so. These are collateral roadmasters. They tell us what the policy or the practice of the railroad is, and it's one thing to say, well, we asked him to come in. Well, we called him and we said, Kelso, we need you. Will you come in? And he's a good employee, and he says, yes, I'll come in. Now, he's expected to come in, according to the testimony that's in the record. If he doesn't come in, would he be fired? No, no. He doesn't have to come in. Okay. I think that we'll have to do. So thank you very much. Thank you, Your Honor. Thank you as well. The case will be taken under advisement.